The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award, except with the modification regarding vocational rehabilitation issues.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between the parties at all relevant times.
3. Aetna Casualty and Surety was the carrier on the risk at all relevant times.
4. A Form 21 Agreement was entered into between the parties and approved by the Industrial Commission on 28 May 1992.
5. The parties later agreed that plaintiff was entitled to a compensation rate of $382.08 per week, which has been paid by defendants to plaintiff since 15 February 1992.
6. Plaintiff has not returned to any gainful employment of any kind since his accident on 14 February 1992.
7. The parties stipulated medical and rehabilitation records as set out in Number 7 of The Pre-Trial Order to complete the record.
8. A Pre-Trial Agreement was submitted and is made a part of the record in this case. Additionally, the depositions of Jill McClellan, clinical counselor, Thomas L. Rapp, D.O., and Dr. Stephen Shaffer, orthopedist are made a part of the record in this case.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with modifications and finds as follows
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was 46 years of age and lived in Dublin, Ohio. He has a high school education and has completed approximately 20-28 college credit hours in general business courses.
2. Plaintiff worked for defendant-employer as a long distance truck driver from September 1984 through February 1992. He sustained an admittedly compensable injury by accident arising out of and in the course of his employment on 14 February 1992, when he slipped on ice while cranking down the landing gear on his trailer sustaining an injury to his low back.
3. Following his 14 February 1992 injury, plaintiff sought medical treatment from Dr. John Wolf, who provided conservative treatment in the form of physical therapy and anti-inflammatory medications. When conservative treatment failed, Dr. Wolf referred plaintiff to Dr. David Yashon.
4. On 24 March 1992, plaintiff began treatment with Dr. Yashon, who performed a battery of diagnostic tests, including lumbar spine x-rays, lumbar myelogram, lumbar CT scan, EMG studies, and a bone scan. Plaintiffs EMG studies were negative ruling out the existence of nerve root compression or irritation, as well as radiculopathy. All other studies were normal, except for a showing of degenerative disc disease and minimal spondylolysis. Concluding that no anatomic organic abnormality could be found to support plaintiffs complaints, Dr. Yashon returned plaintiff to Dr. Wolfs care.
5. Dr. Wolf referred plaintiff to Dr. Gerald M. Papp for epidural steroid injections. Plaintiff began treating with Dr. Papp on 6 July 1992. He received a series of epidural steroid injections by Dr. Papp, along with further conservative treatment. According to Dr. Papp, plaintiff was not a surgical candidate and could return to moderate duty employment, subject to appropriate work restrictions determined by a functional capacity evaluation. Plaintiff underwent a functional capacity evaluation on 9 September 1993.
6. Plaintiffs functional capacity evaluation demonstrated that he was capable of performing sedentary or light duty type employment. According to Dr. Papp, plaintiff has reached maximum medical improvement and was assigned a 20% permanent partial disability to the back. Dr. Papp released plaintiff from his care and he instructed him to seek maintenance care from a family physician.
7. Dr. Alan M. Segal at the Cleveland Clinic Foundation saw plaintiff on 12 July 1994 and 23 August 1994. Dr. Segals examination revealed normal toe and heel walk, normal deep tendon reflexes, negative straight leg raising in both the seated and supine positions and three of five Waddell signs, including inappropriate tenderness, simulation/axial loading and overreaction. After reviewing a lumbar MRI, Dr. Segal diagnosed plaintiff with only degenerative disk disease. The doctor recommended a pain management program and a comprehensive evaluation by a vocational rehabilitation specialist. Dr. Segal determined plaintiff was not a surgical candidate.
8. After defendants began the process of vocational rehabilitation, plaintiff sought authorization and approval from the Industrial Commission for his participation in a stress and pain management program.
9. On 4 November 1994, Deputy Commissioner Richard B. Ford ordered defendants to facilitate and arrange plaintiffs participation in a pain management program to include psychological counseling and, if appropriate, a comprehensive evaluation by a vocational rehabilitation specialist.
10. Plaintiff began receiving treatment from Richard E. Schimmoller, D.O., at Lincolnview Family Physicians. Dr. Schimmoller recommended referral to a pain and stress management program that included psychological counseling.
11. Plaintiff began seeing Jill McClellan, a licensed professional clinical counselor, at the Dublin counseling Center on 11 March 1994. She diagnosed plaintiff with major depression and recurrent chronic depression, without psychotic symptoms.
12. Plaintiff was enrolled in a chronic pain management program at Ohio State University under the direction of Dr. Paul Kaplan. On 5 January 1995, plaintiff was seen for an initial physical and psychological evaluation. Plaintiff was discharged from the chronic pain management program on 17 February 1995, at which time a vocational evaluation was recommended.
13. Defendants provided a comprehensive vocational evaluation for plaintiff on 23 March 1995, performed by Hartung Associates of Dublin, Ohio. The specific goals of the comprehensive vocational evaluation were to determine plaintiffs level of employability and to develop a specific vocational goal. From the comprehensive vocational evaluation, it was determined that plaintiff possessed cognitive and reasoning ability to adapt to new work settings with little difficulty and that he possessed other vocational skills that would facilitate his transfer to other skilled, semi-skilled or unskilled occupations. It was further determined that plaintiff was capable of performing light physical demand level of employment, which included lifting up to 20 pounds occasionally, up to 10 pounds frequently and negligible amounts constantly. Light employment also included the ability to sit, stand, or walk frequently.
14. During his comprehensive vocational evaluation, plaintiff reported being able to engage in activities consistent with the determination of his ability to perform light physical demand employment, including using a tractor to mow his 3-4 acre yard, walking 2-3 miles per day, lifting and carrying approximately20-25 pounds from waist height and 10 pounds from floor level, and sitting tolerances of 20-30 minutes.
15. As a follow-up to the comprehensive vocational evaluation, defendants retained Comprehensive Rehabilitation Associates, Inc. to assist plaintiff in job placement efforts. Sally Patrow, certified vocational evaluator, was assigned to assist plaintiff with job search. The evaluator initially met with plaintiff on 27 April 1995, and reviewed with him the recommendation of the vocational evaluation to initiate job search efforts. Plaintiff reported to the evaluator that he would not initiate job search until directed to do so by his attorney.
16. In a letter dated 8 June 1995, Dr. Schimmoller stated that plaintiff was psychologically disabled because he did not believe that he could perform some relatively simple tasks.
17. Plaintiff continued to receive treatment at the Lincolnview Family Physicians where his treating physician was changed from Dr. Schimmoller to Thomas L. 0. Rapp. D.O. In a letter dated 7 March 1996 to plaintiffs attorney, Dr. Rapp found plaintiff at maximum medical improvement and permanently and totally disabled from gainful employment. Dr. Rapp has diagnosed plaintiff with a chronic lumbosacral strain.
18. Defendants filed a Motion to Stop Payment of Compensation, which was heard by then Special Deputy Commissioner, Martha W. Lowrance. In an Administrative Decision and Order filed on 30 January 1996, Special Deputy Commissioner denied defendants Motion to Stop Payment of Compensation.
19. However, Special Deputy Commissioner Lowrence ordered plaintiff to cooperate fully with psychological and vocational rehabilitation services. Plaintiff was ordered to make his best efforts to assist in the job search on his own initiative.
20. In a 13 May 1997, letter to plaintiffs attorney, Dr. Rapp stated that the plaintiff continued to have chronic intermittent lower back pain, leg aches and numbness of the legs and medications provided to him provided only marginal relief. According to Dr. Rapp, plaintiffs condition is static and he remains permanently and totally disabled.
21. In a 20 June 1997 letter to plaintiffs attorney, Ms. McClellan stated it would be difficult for plaintiff to hold a job at that time. This is based on her opinion that the emotional energy needed to function with plaintiffs chronic pain would make concentration difficult and his physical limitations were such that he could not rely on his body to perform normal tasks because of his injury.
22. While plaintiff did not appropriately use defendants vocational rehabilitation assistance, he did make a reasonable, good faith effort on his own initiative to locate suitable employment and to exercise. Thus, plaintiff has complied with Special Deputy Lowrences order to an acceptable, but minimal degree.
23. Plaintiff contends that he is totally and completely disabled from engaging in any type of gainful employment due primarily to low back pain that, after sitting or standing for very brief periods, radiates to his lower extremities and causes numbness in both feet. Plaintiff allegedly has a sitting tolerance of only20-30 minutes because of his injury.
24. On 24 July 1997, Dr. Stephen R. Shaffer, Board Certified orthopedist in Asheville, North Carolina, evaluated plaintiff. After reviewing all of plaintiffs prior treatment records, including all diagnostic study films and results, Dr. Shaffer conducted a physical examination. During this examination, Dr. Shaffer noted that plaintiff displayed inappropriate complaints of pain and withdrawal responses in areas that were outside the parameters of the spinal axis. If a patient complains of pain in the middle of his back and pulls away when palpated underneath the rib cage, complaining that it is very painful, then that is an inappropriate response as far as the patients complaints are concerned. Plaintiff had inappropriate withdrawal responses, as he had earlier with Dr. Segal, when he was palpated about the lateral hips, about the upper outer gluteal regions and occasionally about the lower lumbar lateral regions, all areas where pain provocation should not be elicited.
25. Dr. Shaffer also noted plaintiffs inappropriate and inconsistent response to straight leg raising in the seated position. In sensation testing procedures, plaintiff exhibited similar inappropriate and inconsistent responses. Plaintiff had no atrophy in his lower extremities, no loss of strength in his lower extremities and ordinary range of motion with his back. According to Dr. Shaffer, given the nature and duration of plaintiffs complaints, "it would be surprising not to find atrophy or some strength loss in the lower extremities.
26. According to Dr. Shaffer, plaintiff is not permanently and totally disabled from gainful employment. Dr. Shaffer is a Board-Certified orthopedist who has treated numerous patients with low back injuries, while Dr. Rapp has candidly admitted that he does not specialize in back care. Therefore, greater weight is given to the expert testimony of Dr. Shaffer than to that of Dr. Rapp, particularly with regard to plaintiffs ability to engage in gainful employment.
27. Based on the medical evidence of record, plaintiff has no disk herniation, free disk fragment or any other lesion or condition causing nerve root compression.
28. On 5 June 1997, plaintiff was in Asheville for a mediation of this claim. Following the mediation, plaintiff was observed operating a van from the Asheville area for more than two hours while traveling on interstate highways, without stopping for rest. Plaintiffs demonstrated ability to operate his vehicle for this prolonged period of time contradicts his hearing testimony that he could drive for less than an hour and statements he made to his treating physicians regarding his alleged sitting limitation of20-30 minutes.
29. Vocational rehabilitation is medically necessary to lessen plaintiffs disability. In this particular case, plaintiff would benefit from reasonable vocational rehabilitation services by a specialist of his choosing in Ohio where he resides. While it is not usually the case that the vocational specialist is chosen by the plaintiff, it is reasonable in this instance because of the particular psychological components of this case. Although it is reasonable in this case to deviate from standard Commission procedure based on statutory law by allowing plaintiff to select the vocational specialist, all other Commission procedures and guidelines for vocational rehabilitation professionals remain effective. This is not meant to change the vocational process but merely to allow plaintiff to select the vocational specialist.
30. Plaintiff has reached maximum physical improvement with regard to the injury to his back. Plaintiff has not reached maximum medical improvement because vocational rehabilitation could lessen plaintiffs disability.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff is not permanently and totally disabled. N.C. Gen. Stat. 97-29 and Niple v. Seawell Realty Ind. Co.,88 N.C. App. 136, 362 S.E.2d 572 (1987).
2. Defendants have failed to prove by the greater weight of the evidence that plaintiff was no longer totally disabled after either 22 June 1995 or 30 January 1996. Therefore, plaintiff is entitled to continue to receive temporary total disability compensation in the amount of $382.08 per week. Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200, 472 S.E.2d 382
(1996) and N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to have defendants pay for all medical treatment and vocational rehabilitation services that are reasonably necessary to effect a cure, provide relief or lessen plaintiffs disability as a result of her compensable burst fracture in his back. N.C. Gen. Stat. 97-25.
4. Plaintiff is entitled to reasonable vocational rehabilitation services in Ohio to be paid for by defendants. In this particular case, plaintiff would benefit from reasonable vocational rehabilitation services by a specialist of his choosing. While it is not usually the case that the vocational specialist is chosen by the plaintiff, it is reasonable in this instance because of the particular psychological components of this case. Although it is reasonable in this case to deviate from standard Commission procedure by allowing plaintiff to select the vocational specialist, all other Commission Rules, procedures and guidelines for vocational rehabilitation professionals remain in effect. This is not meant to change the vocational process but merely to allow plaintiff to select the vocational specialist. N.C. Gen. Stat.97-25.
5. Plaintiff complied with vocational rehabilitation ordered by the Commission to an acceptable, but minimal degree. N.C. Gen. Stat.97-29 and 97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiffs claim for permanent and total disability compensation must be and the same is hereby DENIED.
2. Defendants shall continue to pay plaintiff temporary total disability compensation at the rate of $382.08 per week until plaintiff returns to work at the same or greater wages or further order of the Commission.
3. Defendants shall pay all medical and vocational expenses related to his compensable injury for so long as such treatment may be reasonably necessary to effect a cure, give relief or lessen plaintiffs disability, when bills for the same have been submitted in accordance with Industrial Commission procedure.
4. Defendants shall continue to provide vocational rehabilitation assistance, which in this particular case is to be selected by plaintiff. Plaintiff shall select within 30 days of the filing of this Opinion and Award an appropriate vocational rehabilitation counselor or program and promptly notify defendants. Otherwise, the Rules for Utilization of Rehabilitation Professionals dictate the vocational process as usual. Plaintiff shall fully cooperate with the vocational rehabilitation services including but not limited to reasonably making and meeting appointments and reasonably following program plans.
5. Defendants shall bear the costs of this action.
This the ___ day of March 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER